# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GULINA KUBATBEK KYZY,** | Case No. 2:19-cv-00885-JDW |
| *Plaintiff,* | |
| v. | |
| **US CITIZENSHIP AND IMMIGRATION SERVICES,** *et al.*, | |
| *Defendants.* | |

## MEMORANDUM

This Motion presents two questions for the Court's determination. First, can the Court consider a challenge to a decision by the United States Citizenship and Immigration Services ("USCIS") to deny an asylum applicant an employment authorization. Second, if the Court can consider the challenge, did USCIS do something wrong when it denied such an authorization to Plaintiff Gulina Kubatbek Kyzy. The Court concludes that it has jurisdiction to hear this dispute but that the undisputed facts demonstrate that USCIS did not act arbitrarily and capriciously and did not violate any obligation it owes to Ms. Kyzy. The Court will therefore deny the Motion to dismiss the case but grant the Motion for summary judgment.

I.  **FACTUAL BACKGROUND**

   A.  **Statutory Scheme Governing Applications For Employment By Asylum-Seekers**

Any noncitizen who is in the United States or who seeks admission at a port of entry may apply for asylum. 8 U.S.C. § 1158(a)(1). Absent exceptional circumstances, an asylum application must be adjudicated within 180 days after it is filed. 8 U.S.C. § 1158(d)(5). During this 180-day period, Congress provides that asylum applicants are ineligible for employment

authorization; however, employment authorization "**may** be provided under regulation by the Attorney General" following the 180 days. 8 U.S.C. § 1158(d)(2) (emphasis added). In accordance with this statute, 8 C.F.R. § 274a.12(c)(8)(i) provides that "[a]n alien who has filed a complete application for asylum or withholding of deportation or removal. . ., whose application has not been decided, and who is eligible to apply for employment authorization under [Section] 208.7" may apply for such authorization. Section 208.7(a)(1) specifies that an application for employment authorization pursuant to 8 C.F.R. 274a.l2(c)(8) "shall be submitted no earlier than 150 days after the date on which a complete asylum application submitted in accordance with [Sections] 208.3 and 208.4 has been received" and that, in accordance with 8 U.S.C. § 1158(d)(2), USCIS shall not issue an employment authorization "prior to the expiration of the 180-day period following the filing of the asylum application." Section 208.7(a)(2) goes on to state:

> The time periods within which the alien may not apply for employment authorization and within which USCIS must respond to any such application and within which the asylum application must be adjudicated pursuant to section 208(d)(5)(A)(iii) of the Act shall begin when the alien has filed a complete asylum application in accordance with §§ 208.3 and 208.4. Any delay requested or caused by the applicant shall not be counted as part of these time periods . . . .

8 C.F.R. § 208.7(a)(2).

### B. Factual Background

Ms. Kyzy, a citizen of Kyrgyzstan, arrived in the United States on a B2 Visa on November 6, 2012. On August 27, 2013, Ms. Kyzy filed an affirmative asylum application for Withholding of Removal with USCIS. On September 1, 2016, Ms. Kyzy withdrew her application. The record does not reveal why, but it appears her decision to do so was voluntary.

After Ms. Kyzy withdrew her asylum application, the Department of Homeland Security ("DHS") placed Ms. Kyzy in removal proceedings. In response, on December 7, 2016, Ms. Kyzy lodged a Form I-589 Application seeking asylum and/or withholding of removal with the

Immigration Court. Approximately two weeks later, Ms. Kyzy and DHS filed a "joint motion to administratively close" her removal proceedings. (ECF No. 1, Ex. 4.) The presiding immigration judge granted the parties' request. Therefore, on December 22, 2016, Ms. Kyzy's removal proceedings were administratively closed.

On December 12, 2017, Ms. Kyzy filed with USCIS a Form I-765 to request employment authorization and an Employment Authorization Document ("EAD"). USCIS denied Ms. Kyzy's Form I-765 application and provided the following explanation:

> A review of the record shows that you lodged an application for asylum on December 7, 2016. At the time of filing the immediate application you had not accrued the required 180 clock days.

(ECF No. 12 at 8.)

### C. Procedural History

On March 1, 2019, Ms. Kyzy filed the Complaint in this action. In Count I of the Complaint, she alleges that the Government violated her rights under the Immigration and Nationalities Act and the Due Process Clause by denying her an EAD. In Count II, she alleges that USCIS's denial of her application for an EAD violated the Administrative Procedures Act ("APA"). In Count III, she alleges that USCIS's denial of her application violates the Constitution's guarantee of equal protection. The Government filed this Motion on June 12, 2019.

## II. LEGAL STANDARD

A district court may dismiss a plaintiff's complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A district court has jurisdiction to review an agency's determination of an individual's employment authorization eligibility under 28 U.S.C. § 1331 and the APA only if the agency action (1) is final, (2) adversely affects the party seeking review of the decision, and (3) is non-discretionary. *See Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005).

"While summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review, because the district judge sits as an appellate tribunal in such cases, the usual summary judgment standard does not apply." *Dorley v. Cardinale*, 119 F. Supp.3d 345, 351 (E.D. Pa. 2015). Instead, under the APA, the district court is empowered only to set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard has two different facets. The first, "arbitrary, capricious, [or] an abuse of discretion" looks at the reasoning the agency employed in coming to its decision. *See Mirjan v. Attorney Gen. of the United States*, 494 Fed. App'x 248, 250 (3d Cir. 2012) (citing *Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804, 807 (3d Cir. 1985)). The second, whether an agency's decision is "otherwise not in accordance with law," examines whether an agency's action, although well-reasoned, violates any statutes or regulations.

Review under the "arbitrary and capricious" standard "is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Indeed, for its action to be upheld, an agency is required only to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *CBS Corp. v. Fed. Commc'ns Comm'n*, 663 F.3d 122, 137 (3d Cir. 2011) (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). If, on the other hand, "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise" the agency's actions are arbitrary and capricious. *Id*. The "focal point for judicial review should be the administrative

record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

**III.     ANALYSIS**

    **A.     Subject Matter Jurisdiction**

The government contends this Court lacks jurisdiction to hear Ms. Kyzy's case because USCIS's denial of her application for employment authorization is not a final agency action for purposes of APA review. An agency action is considered "final" when two conditions are met. First, the agency action "mark[s] the consummation of the agency's decision-making process" and is not "merely tentative or interlocutory in nature." *Pinho*, 432 F.3d at 200. Second, the agency action is one from which "rights or obligations have been determined" or from which "legal consequences will flow." *Id.* (quoting *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). For a decision to be final, a plaintiff must show that she has exhausted her administrative remedies, but "only when expressly required [to do so] by statute" and only when the statute sets forth "steps that [she] can take to have an action reviewed within the agency." *Jie Fang v. Dir. United States Immigration & Customs Enf't*, 935 F.3d 172, 181 (3d Cir. 2019).

Here, USCIS's decision is final because the applicable statute, 8 U.S.C. § 1158, does not provide a basis for Ms. Kyzy to have the decision concerning her application for an employment authorization reviewed administratively. In fact, the applicable regulation makes clear that "**there shall be no appeal** from the denial of [an employment authorization] application." 8 C.F.R. § 274a.13(c) (emphasis added). USCIS communicated the finality of its decision to Ms. Kyzy in its notice of its decision. (ECF No. 1, Ex. 5.) Nevertheless, the Government argues that because

Ms. Kyzy can re-calendar her removal proceedings and restart the 180-day waiting period, USCIS's denial of her employment authorization application cannot be considered final.

The Court disagrees. In *Pinho*, the Third Circuit explained that "[i]f there remain steps that the immigrant can take to have an action reviewed within the agency, then the action is not final and judicial review is premature." 432 F.3d at 200. The Third Circuit's analysis in *Pinho* indicates that "steps that the immigrant can take" meant "further procedures that Pinho could invoke to have his claim [] heard." *Id*. Here, there are no further steps that Ms. Kyzy could take to have her application for employment authorization heard. USCIS has resolved that application.

Moreover, the Government's argument, if correct, would effectively mean that no court could ever have jurisdiction to determine a claim like Ms. Kyzy's claim here. The nub of Ms. Kyzy's claim is that the 180-day waiting period has already run, and USCIS therefore erred in denying her application. Ms. Kyzy does not need to re-calendar her administrative proceeding in order to make that claim ripe. Indeed, forcing her to do so would effectively resolve the merits of her claim by forcing her to wait until the 180-day waiting period has expired. Accordingly, the Court concludes that it has jurisdiction to hear these claims.

### B. Substantive Claims

With the jurisdictional questions resolved, the Court turns to the summary judgment motion addressed to each of Ms. Kyzy's claims.

#### 1. USCIS's waiting period determination

Ms. Kyzy claims that USCIS erred in concluding that 180 days had not yet passed when she applied for employment authorization. The basis for her argument is somewhat muddled, however. In her Complaint, Ms. Kyzy suggests that the 180-day waiting period started to run in August 2013, when she filed her affirmative asylum application. (ECF No. 1, ¶ 48.) In her

Opposition, however, Ms. Kyzy argues that "USCIS erred by not calculating her EAD clock continuously from December 7, 2016," *i.e.*, the date that she filed her defensive I-589 form (ECF No. 12, P.16). The arguments in her favor vary depending on which date she uses. However, the Court concludes that USCIS did not act arbitrarily and capriciously either basing its calculation on her submission on December 7, 2016, or in concluding that 180 days had not run from that time.

The Court must hold unlawful and set aside agency action, findings, and conclusions that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. However, an action is not arbitrary, capricious, or an abuse of discretion just because the Court believes it was "ill-considered" or represents the "less appealing alternative solution available." *Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 223 (3d Cir. 2003) (quoting *Hondros v. United States Civil Service Comm'n*, 720 F.2d 278, 295–296 (3d Cir. 1983)). Rather, the agency's action must be "rationally related to the purposes to be served, and supported by the facts found in the record." *Id*.

As a threshold matter, Ms. Kyzy cannot base her claim on her initial asylum application in 2013. 8 C.F.R. § 274a.12(c)(8) provides that an "alien who has filed a complete application for asylum . . ., whose application has not been decided, and who is eligible to apply for authorization under [Section] 208.7" may apply for employment authorization. 8 C.F.R. § 208.7, in turn, provides that an "**applicant** for asylum who is not an aggravated felon shall be eligible . . . to request employment authorization." The undisputed facts establish that Ms. Kyzy withdrew her asylum application on September 1, 2016. When she did so, she ceased to be an "applicant" for asylum. She therefore was not eligible to apply for employment authorization under Section 208.7, which also rendered her ineligible under Section 274a.12(c)(8).

Moreover, Section 208.7(a)(2) provides that the 180-day waiting period begins to run when an alien filed a "complete asylum application." It was reasonable for USCIS to interpret this provision to mean a then-pending application, rather than one that was abandoned some time in the past. The 180-day waiting period is tied to the statutory presumption that asylum applications will be resolved in 180 days. *See* 8 U.S.C. § 1158(a)(1). In extraordinary cases where more time is needed, asylum applicants can seek authorization for employment while awaiting a determination on a pending application. However, if an applicant withdraws her application and therefore deprives the immigration judge of an opportunity to rule on it, she frustrates the purpose of the statute and must necessarily give up the right to seek employment while awaiting a determination.

When Ms. Kyzy filed her I-589 form in December 2016, she began a new asylum application process. That new process began new clocks under the regulations. Otherwise, an asylum applicant could game the system, obtain an employment authorization, and avoid any final ruling on his or her application if he or she could run out the 180-day clock, terminate the proceedings, and then demand an employment authorization.

Moreover, USCIS acted reasonably in concluding that the 180-day waiting period had not yet run when Ms. Kyzy applied for an employment authorization in December 2017. Ms. Kyzy submitted her I-589 on December 7, 2016. On December 22, 2016, the immigration proceedings were administratively closed as a result of the joint request that she and DHS made. Section 208.7(a)(2) provides that the 180-day waiting period does not run during any "delay requested or caused by the applicant . . . ." 8 C.F.R. § 208.7(a)(2). Ms. Kyzy joined in the request to close her proceedings administratively. She therefore "requested" the delay within the meaning of Section

8

208.7. As a result, the 180-day waiting period stopped accruing on December 22, 2016. Thus, only 15 days of the required 180 days passed.

In her Opposition, Ms. Kyzy argues that because she and DHS jointly requested the proceedings be administratively closed, she did not request a delay under Section 208.7. Her argument fails to account for the regulatory language, however. Section 208.7 does not say that an alien must "solely" request or cause the delay. To the contrary, it requires only that the alien "request" the delay. When Ms. Kyzy joined the request to administratively close the proceedings, she "requested" an action, and that action caused a delay in the proceedings. The joint nature of that request is irrelevant.

### 2. Due process

In her Complaint and again in her Opposition, Ms. Kyzy contends that DHS deprived her of her due process rights because it did not adequately alert her to the consequence of joining the request to close her removal proceedings administratively in December 2016. It is not clear, however, that she had a protected property interest. Even if she did, Section 208.7 is clear on its face, so she was not deprived of any interest.

In order to state a Due Process claim, a plaintiff must show that she was deprived of a liberty or property interest. *See Hernandez v. Gonzales*, 437 F.3d 341, 346 (3d Cir. 2006). To make that showing, the plaintiff must have "a legitimate claim of entitlement to" the interest at issue that stems from "an independent source" of law or "rules or understandings that secure certain benefits." *McKinney v. Univ. of Pittsburgh*, 915 F.3d 956, 960 (3d Cir. 2019). Here, Ms. Kyzy has failed to show that she has a property interest at stake.

Congress has made clear that "an applicant for asylum is not entitled to employment authorization." 8 U.S.C. § 1158(d)(2). Further, the applicable regulation, Section 274a.12(c)(8)(i),

9

states only that "employment authorization **may** be granted according to the provisions of § 208.7" for eligible asylum applicants. 8 C.F.R. §274a.12(c)(8)(i) (emphasis added). The statute and regulations thus demonstrate that asylum applicants have no right to employment authorization, even if they meet the eligibility requirements.

In addition, Ms. Kyzy's Due Process claim fails because she cannot show that DHS or anyone else deprived her of any interest she might have had. Ms. Kyzy contends that (1) DHS's publications did not specifically state that joining in a request to administratively close her proceedings could impact her application for an employment approval, (2) that omission deprived her of notice of the consequence of her actions, and (3) she therefore could not make an "informed decision" as to whether to administratively close her case. (ECF No. 12 at 20.) The problem with that argument is that Ms. Kyzy was not permitted to ignore the plain language of Section 208.7. That section states, clearly and unequivocally, that when an alien makes a request that has the effect of delaying a proceeding, the 180-day clock will not continue to run. Ms. Kyzy did just that, and nothing she has shown on the record suggests that there was any contrary advice or ambiguity that might have led her to a different conclusion. Her misinterpretation of the regulations does not create a due process concern.

### 3. Equal protection

Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has construed the Fifth Amendment's Due Process Clause as containing an equal protection guarantee. *See Edmonson v. Leesvill Congrete Co.*, 500 U.S. 614, 616 (1991). Ms. Kyzy argues that the denial of her EAD violated the Equal Protection Clause because it was inconsistent with precedent established in an Administrative Appeals Office ("AAO") decision from July 6, 2013. To pursue a claim for violation of the Equal Protection Clause, Ms. Kyzy must demonstrate that

she received different treatment from that received by other individuals similarly situated.  *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016).

Ms. Kyzy cannot demonstrate that she was similarly situated to the parties in the appeal on which she bases her argument.  The AAO decision she references dealt with whether an asylum applicant, whose case was pending for over 180 days before it was closed administratively, was still eligible for employment authorization.  The AAO found that the joint request to close the asylum case administratively did not change the "undecided nature" of the case within the meaning of 8 C.F.R. 274a.12(c)(8) because the immigration judge's decision to close the case was not a final order.  On the other hand, the issue here is whether the joint request to close the case administratively constitutes a "delay requested or caused by the applicant" pursuant to 8 CFR § 208.7(a)(2) that therefore tolls the 180-day waiting period.  That issue did not arise in the other case; to the contrary, there was no question in the AAO decision that 180 days had passed before the case was closed administratively.  That distinction renders the two cases inapposite.  Ms. Kyzy therefore cannot show that USCIS treated her differently from anyone who was similarly situated, let alone that it did so improperly.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies the government's motion to dismiss but grants its motion for summary judgment with respect to each of Ms. Kyzy's claims.  An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Dated: November 22, 2019